IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
Huntington Division

LOIS MORRIS &
CHARLES MORRIS,

    Plaintiffs,

v.                                          CIVIL ACTION NO.:    3:20-cv-00750
                                          Judge _____

WEST VIRGINIA CVS PHARMACY, LLC
d/b/a Pharmacy #6281, and
KATHY GIBBS

    Defendants.

## COMPLAINT

NOW COME the Plaintiffs Lois Morris and Charles Morris, and bring this case against Defendants, West Virginia CVS Pharmacy, LLC, d/b/a Pharmacy #6281 and Kathy Gibbs for injuries Lois Morris suffered while she was under the medical care of Defendants. In support of this Complaint, Plaintiffs allege as follows:

## PARTIES

1. Lois Morris is and was a resident of Wood County, West Virginia at all times relevant to this Complaint. Lois Morris is married to Charles Morris, who is also a resident of Wood County, West Virginia.

2. Defendant West Virginia CVS Pharmacy, LLC, d/b/a Pharmacy #6281 (hereinafter "CVS") is a West Virginia Limited Liability Corporation which owns and operates retail pharmacies throughout West Virginia, including Pharmacy #6281 located in Wood County, West Virginia, and pharmacies in Cabell County, West Virginia. Defendant CVS is member managed and consists of members which are not residents of West Virginia.

1

3. Defendant, Kathy Gibbs, is a resident of Ohio. Ms. Gibbs is a Pharmacist duly licensed in the state of West Virginia. Kathy Gibbs is the Responsible Pharmacist for CVS Pharmacy #6281 which is located in Wood County, West Virginia. Ms. Gibbs works, full time, as a pharmacist in West Virginia and, at all times relevant to the instant civil action, was employed by West Virginia CVS Pharmacy, LLC. At all times relevant to this Complaint, Ms. Gibbs was both an agent and employee of West Virginia CVS Pharmacy, LLC., and works as a retail pharmacist in Pharmacy #6281.

## JURISDICTION AND VENUE

4. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-3 above and further states as follows.

5. Jurisdiction and Venue are proper in the United States District Court for the Southern District of West Virginia, Huntington Division, as the actions which form the basis for the instant civil action occurred in West Virginia; complete diversity of parties exists; and Defendant CVS transacts business throughout West Virginia, including Cabell County.

## STATUTORY NOTICE

6. On November 5, 2019, Plaintiffs provided Notices of Claim(s) and Certificate(s) of Merit to Defendants, pursuant to West Virginia Code §55-7B-6.

7. On November 20, 2019, Defendants requested prelitigation mediation pursuant to West Virginia Code §55-7B-6(g).

8. The Parties entered into a "tolling agreement" whereby the Defendants agreed to an open-ended extension of all statutes of limitations to allow the Parties time to negotiate a pre-suit settlement of the claim.

9. The Parties last corresponded on October 22, 2020 and November 5, 2020. Resolution by prelitigation mediation / settlement has been unsuccessful as of the filing of this Complaint.

10. The Plaintiffs have fulfilled all statutory requirements to file the instant civil action.

## FACTS

11. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-10 above and further states as follows.

12. Vaccinations at retail pharmacies such as CVS is a relatively new development. In the early 2000s there was a concerted push to allow pharmacists to administer vaccinations. Retail pharmacy chains, such as CVS/Caremark Corp., lobbied State Legislatures to allow pharmacists to administer seasonal influenza shots. In 2009, several states issued special waivers to allow pharmacists to administer flu vaccinations. Thereafter, the majority of States followed suit and have allowed pharmacists to administer flu vaccine.

13. Nationwide, CVS/Caremark Inc. has enjoyed an increase in flu shot business as a result of the ability for pharmacists to administer inoculations. Forbes reports that through February 5, 2013, CVS/Caremark Inc., had given 4.8 million flu shots; which was more than double the 2.3 million flu shots given throughout the entirety of 2012.

14. CVS derives significant revenue from the administration of vaccines at its retail pharmacy locations. CVS pushes its employees, including pharmacists, to quickly perform pharmacy functions, including the administration of vaccinations to increase profitability.

15.  Inoculations are not without risks.  The Centers for Disease Control (CDC) notes that vasovagal / syncope (fainting) reactions are an ever-present risk when providing vaccinations.  The Vaccine Adverse Event Reporting System (VAERS), receives numerous reports of post-inoculation syncope each year.  Patient injury from falls as a result of immunizations are a serious risk with the main concern being head injuries.  Accordingly, pharmacies and pharmacists must take adequate precautions when administering vaccines to patients.

16.  On November 20, 2017, Lois Morris and Charles Morris presented to CVS Pharmacy #6281, located in Wood County, West Virginia to obtain a flu inoculation.

17.  Lois Morris was the first person to receive an inoculation.  Defendant Kathy Gibbs directed Ms. Morris to sit down in a chair adjacent to the pharmacy counter. Defendant Gibbs administered the vaccination to Ms. Morris and then immediately directed Ms. Morris to stand up and walk to the counter to fill out paperwork.

18.  Ms. Morris stood up at Defendant Gibbs request.  As Ms. Morris started walking toward the pharmacy counter, she suffered a vasovagal (fainting) reaction to the inoculation.  Ms. Morris fell from a standing position and hit her head on the counter and then the floor.  Charles Morris witnessed his wife fall and strike her head.  Ms. Morris was fully unconscious and non-responsive for a time and was transported via ambulance to Camden Clark Hospital in Parkersburg, West Virginia.

19.  Ms. Morris was diagnosed with a closed head injury and was hospitalized for three nights.  Thereafter, Ms. Morris suffered cognitive changes and required significant assistance in activities of daily living as a result of her injuries from the fall at CVS. Ms. Morris suffered prolonged loss of consciousness, brain contusions and neurologic symptoms which indicate a traumatic brain injury sustained in the fall.

20. Ms. Morris continues to suffer lingering complications from the injuries she sustained in the fall. Said complications include, but are not limited to positional vertigo, cognitive changes and difficulty with balance.

21. Ms. Morris incurred medical bills and other incidental monetary losses as a result of the injuries from the fall at CVS Pharmacy #6281.

22. Mr. Morris witnessed his wife's life-threatening injuries and tended to her throughout her convalescence. Mr. Morris missed work and incurred monetary loss while he cared for his wife.

## COUNT I
### BREACHES OF THE APPLICABLE STANDARD OF CARE AGAINST ALL DEFENDANTS

23. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-22 above and further states as follows.

24. This is an action against Defendants, CVS and Kathy Gibbs, for damages resulting from violations of the applicable standards of care for medical treatments rendered to Lois Morris.

25. The Defendants, CVS and Kathy Gibbs, owed their patient, Lois Morris, a duty to comply with the applicable standard of care as it relates to medical care administered throughout her time as Defendants' patient.

26. Defendant CVS, and Defendant Kathy Gibbs, breached the applicable standard of care owed to Lois Morris by acts and/or omissions which include but are not limited to: failing to provide an immunization administration process conducive to appropriate patient care; failing to mandate appropriate seated recovery time after the vaccine injection; and ordering Ms. Morris to stand up and walk immediately upon administration of the vaccine.

27. As a direct and proximate result of the careless and negligent actions, and breaches in the applicable standard of care by Defendant CVS and Defendant Kathy Gibbs, Lois Morris suffered: a closed head injury; significant pain of body and mind; otherwise unnecessary medical treatments and hospitalizations; medical bills; general pain and suffering, annoyance, inconvenience and aggravation; embarrassment and humiliation; decreased physical and mental function during the time she was recovering from her injuries; and continued cognitive changes related to her closed head injury.

28. As a direct and proximate result of the careless and negligent actions and breaches of the applicable standard of care by Defendants CVS and Defendant Kathy Gibbs, Charles Morris witnessed his wife suffer grave physical injury and he suffered emotional pain and suffering and monetary loss.

29. As a direct and proximate result of the Defendants carelessness, negligence and breaches of the applicable standard of care, Plaintiffs ability to enjoy life have been greatly diminished.

## COUNT II
## LIABILITY OF DEFENDANT CVS

30. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-29 above and further states as follows.

31. Ms. Gibbs actions, as enumerated herein, were within the scope of her employment / agency with Defendant CVS.

32. Defendant CVS is liable for all negligent actions of its agent / employee Kathy Gibbs.

33. Furthermore, Defendant CVS pressured its employees, including Kathy Gibbs, to hastily deliver medical care, at the expense of patient safety, for the express purpose of

boosting profitability. Defendant CVS' actions endangered the safety and wellbeing of patients, including Plaintiff Lois Morris.

33. Ms. Morris suffered serious and permanent injury, as a direct and proximate result of Defendant CVS pressuring its employees, in this case Kathy Gibbs, to shortcut safety protocols.

34. Defendant CVS' actions were willful, wanton and reckless.

35. In addition to non-economic and compensatory damages, the Plaintiffs are entitled to punitive damages against Defendant CVS for its willful, wanton and reckless actions.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for economic and non-economic damages; damages for loss of consortium; punitive damages; attorney's fees and costs of suit; and such other and further relief as the Court may deem proper. The damages set forth above are in excess of the jurisdictional amount of this Honorable Court.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

Plaintiffs, by counsel,

/s/ Jonathan R. Mani
Jonathan R. Mani (WV Bar No. 8824)
MANI, ELLIS & LAYNE, PLLC
P.O. Box 1266
Charleston, WV 25325
(304) 720-1000
(304) 720-1001 facsimile
jrmani@mel-law.com